UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOE HAND PROMOTIONS, INC.,

Plaintiff,

- against -

CASE NO.: 2:26-cv-00322

TROPIC LLC d/b/a TROPIC MKE,
HYACINTH NEMBHARDT,

Defendants.

## COMPLAINT

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff"), by and through its attorneys, for its Complaint against Defendants Tropic LLC d/b/a Tropic MKE and Hyacinth Nembhardt ("Defendants"), hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) as this civil action is brought under the Communications Act of 1934, as amended, 47 U.S.C. § 553 and 47 U.S.C. § 605.

2. Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this District.

### THE PARTIES

3. Plaintiff, Joe Hand Promotions, Inc. is a corporation organized and existing under the laws of Pennsylvania with its principal place of business located at 213 W. Street Road, Feasterville, Pennsylvania 19053. Plaintiff held the exclusive commercial license to distribute and

authorize the public display of the following pay-per-view broadcasts, including all undercard bouts and commentary, for businesses such as the business made the basis of this case:

*Devin Haney vs. Ryan Garcia* telecast nationwide on April 20, 2024,
*Gervonta Davis vs. Frank Martin* telecast nationwide on June 15, 2024,

(the "Programs").

4. Upon information and belief, Defendant Tropic LLC:

   a. is a Wisconsin limited liability company;

   b. is a business that conducts business in the State of Wisconsin;

   c. conducted business as Tropic MKE on the dates of the Programs;

   d. operates, maintains and controls the establishment known as Tropic MKE located at 518 North Water Street, Milwaukee, WI 53202 (the "Establishment"); and

   e. operated, maintained and controlled the Establishment on the dates of the Programs.

5. Upon information and belief, Defendant Hyacinth Nembhardt is an individual residing in the State of Wisconsin. On the dates of the Programs, Defendant Hyacinth Nembhardt:

   a. operated, maintained, and controlled the Establishment;

   b. was an owner of the entity owning and operating the Establishment;

   c. was a member, manager, officer, director, shareholder and/or principal of the entity owning and operating the Establishment;

   d. had a right and ability to supervise the activities of the Establishment; and

   e. had an obvious and direct financial interest in the activities of the Establishment.

## FACTS

6. Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial, non-residential establishments including bars, restaurants, clubhouses,

2

Case 2:26-cv-00322-BHL   Filed 02/25/26   Page 2 of 7   Document 1

shops, and similar locations. Over the years, Plaintiff has invested a considerable amount of time and money in building a loyal customer base and retaining customers.

7. By written agreement, Plaintiff was granted the sole and exclusive license to distribute and authorize the public display of the Programs to businesses such as the Establishment. The broadcasts of the Programs originated via satellite uplink and were subsequently re-transmitted interstate to cable systems and satellite television companies via satellite signal. The interstate satellite transmissions of the Programs were electronically coded or scrambled and were not available to or intended for the free use of the general public on the scheduled dates of the Programs.

8. Plaintiff entered into subsequent agreements with various commercial establishments in the State of Wisconsin that, in exchange for a fee, allowed them to exhibit each of the Programs to their patrons. In consideration of the aforementioned agreements, Plaintiff expended substantial monies to market, advertise, promote, administer, and transmit the Programs to those establishments in the State of Wisconsin.

9. The Programs were legally available to the Defendants for exhibition in the Establishment only after paying a commercial sublicense fee for each of the Programs to Plaintiff, which fee was determined by the capacity of the Establishment. Defendants, however, chose not to contract with Plaintiff and pay the proper commercial sublicense fees to Plaintiff. Instead, Defendants, themselves and/or through their agents, servants, and/or employees, took affirmative steps to circumvent the commercial sublicensing requirement and unlawfully obtained each of the Programs via a satellite signal or, in the alternative, via a cable signal, whether by misuse of television services, internet, or other devices.

10. In an effort to avoid paying the proper commercial sublicense fees to Plaintiff, some methods used by commercial locations to unlawfully obtain the broadcasts of the Programs include, but are not limited to, the illegal interception and/or receipt of the Programs via satellite signal or cable signal by:

- Intercepting and redirecting cable or satellite service from a nearby residence,
- Registering their business location as a residence,
- Moving a cable or satellite receiver from a residence to their business,
- Obtaining the Programs in violation of the terms of their television service provider agreement, and/or
- Exploiting restricted online access to the Programs by streaming the Programs over the internet through a limited number of legitimate online distributors offering the Programs only for *non-commercial use*.

11. Legitimate *non-commercial* distributors of the Programs clearly limit use of their service or online application to residential, personal, and/or non-commercial use only. Undeterred, commercial locations ignore the terms and conditions, agreements, and online application restrictions of legitimate *non-commercial* distributors and obtain the Programs via satellite signals or via cable signals, unscrambling the signals of the Programs by purchasing the Programs for viewing on a personal device or in a residence for far less than a proper commercial license would cost, then proceed to link the signals to the establishment's television screen(s) to unlawfully exhibit the Programs commercially.

12. Defendants willfully engaged in wrongful acts to intercept and/or receive each of the Programs for free or at a nominal cost or assisted in such actions, while Plaintiff's legitimate customers paid substantially more for the proper commercial sublicenses. Defendants knew, or should have known, the interception and/or receipt and exhibition of the Programs at their Establishment was not properly authorized.

13. The broadcasts of the Programs at the Establishment were not for private viewing and were not for residential, non-commercial purposes. The broadcasts of the Programs at the Establishment were advertised on social media. The Establishment sold food and/or drinks on the dates and during the broadcasts of the Programs. The public display of the Programs at the Establishment were to entice patrons to the Establishment to spend money while viewing the Programs.

14. Defendants intentionally pirated or assisted in the intentional piracy of the Programs for the purpose of their own economic gain. Defendants exhibited the Programs for the commercial purposes of attracting paying customers, patrons, and guests, thereby wrongfully benefiting financially by infringing upon Plaintiff's rights.

15. Defendants did not have license, authorization, permission, or consent from Plaintiff to exhibit any of the Programs in the Establishment.

16. In addition, by virtue of their position(s) as it relates to the Establishment, Defendant Hyacinth Nembhardt had the right and ability to supervise and an obvious and direct financial interest in the activities of the Establishment at all relevant times.

17. At the time of the wrongful conduct described herein, Defendants' agents, servants, and employees were in fact Defendants' agents, servants, and employees and acting within the scope of their employment and authority as Defendants' agents, servants, and employees.

## SATELLITE [47 U.S.C. § 605] AND CABLE [47 U.S.C. § 553] PIRACY

18. Plaintiff repeats, re-alleges, and incorporates by reference each and every allegation and averment set forth in the above paragraphs of this Complaint with the same force and effect as if the same were more fully set forth at length herein.

19. Defendants' unauthorized exhibitions of the Programs were accomplished through the interception and/or receipt of a satellite signal or, in the alternative, through a cable signal. Defendants' violations were willful and for purposes of commercial advantage or private financial gain.

20. Defendants' wrongful actions, in connection with the unauthorized exhibitions of the Programs, as described above, violate 47 U.S.C. § 605. By reason of Defendants' violations of 47 U.S.C. § 605, Plaintiff has standing and capacity to bring a private right of action.

21. Pled in the alternative, Defendants' wrongful actions, in connection with the unauthorized exhibitions of the Programs, as described above, violate 47 U.S.C. § 553, and by virtue of same, Plaintiff has standing and capacity to bring a private right of action.

22. Defendants' wrongful actions, in connection with the unauthorized exhibitions of the Programs, as described above, violate (in the alternative to the extent necessary) 47 U.S.C. §§ 605 or 553.

23. Accordingly, Plaintiff is entitled to judgment in its favor and against each Defendant for statutory damages, in the discretion of this Court, plus interest, costs, and attorney's fees pursuant to 47 U.S.C. § 605 or, alternatively, pursuant to 47 U.S.C. § 553.

PRAYER

WHEREFORE, Plaintiff prays for judgment in favor of Plaintiff and against each Defendant, jointly and severally, as follows:

    a. for statutory damages, in the discretion of this Court, of up to the maximum amount of $110,000.00 for each willful violation of 47 U.S.C. § 605, or alternatively, for statutory damages, in the discretion of this Court of up to the maximum amount of $60,000.00 for each willful violation of 47 U.S.C. § 553;

6

Case 2:26-cv-00322-BHL     Filed 02/25/26     Page 6 of 7     Document 1

b. for Plaintiff's attorney's fees, interest, and costs of suit pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) or, alternatively, pursuant to § 553(c)(2)(C); and

c. for such other and further relief to which Plaintiff may be entitled.

Respectfully,

Dated: February 25, 2026 By: /s/ Ryan R. Janis
Ryan R. Janis, Esq.
Jekielek & Janis
7 Neshaminy Interplex, Suite 209
Trevose, PA 19053
T: 215-337-4860
F: 267-386-2167
ryan@jj-lawyers.com

Attorneys for Plaintiff